## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### Roanoke Division

| | | |
|---|---|---|
| PRICE AUTOMOTIVE II, LLC | ) | |
| | ) | |
|     Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MASS MANAGEMENT, LLC, EDISON | ) | Case No. 3:14-CV-00029 |
| 2 MOTORS, a Virginia limited liability | ) | |
| company, | ) | **FIRST AMENDED COMPLAINT** |
| OLIVER KUTTNER, an individual, | ) | |
| BRUCE AMSTER, an individual, | ) | **Trial By Jury Requested** |
| RED LINE RESTORATIONS, LLC, a | ) | |
| Connecticut limited liability company, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

Plaintiff Price Automotive II, LLC ("Plaintiff"), by and through its undersigned counsel, alleges for its First Amended Complaint against Defendants Mass Management, LLC, Edison 2 Motors; Oliver Kuttner; Bruce Amster; and Red Line Restorations, LLC (collectively, "Defendants"), as follows:

### INTRODUCTION

1.      This action arises from a fraudulent transaction.  Defendant Mass Management, LLC, Edison 2 Motors, a front company operated by Defendant Oliver Kuttner, sold to Plaintiff what was represented to be a valuable, classic automobile: a 1956 Maserati 300S with chassis number 3067 from the Maserati factory.  What Kuttner actually sold, however, was a fake, an elaborate forgery that Kuttner, acting in concert with Defendant Bruce Amster, tried to pass off as a genuine classic Maserati 300S with chassis number 3067 ("the Vehicle").

2.      Kuttner was no stranger to selling this fraudulent vehicle.  He, with the aid of Bruce Amster, previously sold the same vehicle to another purchaser, Scott Rosen.  After Rosen

apparently learned that the Vehicle was not genuine, Kuttner took back the car, refunded Rosen's money, and reimbursed Rosen for the expenses that Rosen had incurred in attempting to restore the vehicle.

3.     Upon discovering that it had been a second victim of Defendants' fraud, Plaintiff demanded the return of the paid portion of the purchase price, but Defendants have refused to do so.

## PARTIES

4.     Plaintiff is a California Limited Liability Company with its principal place of business at 135 E. Sir Francis Drake Blvd., Larkspur, California 94939.  Plaintiffs' only members are two California trusts – the Price Trust and the MLC Trust – and all of the beneficiaries of both of these trusts are California residents.  Plaintiff is in the business of investing in valuable automobile collectibles, and buys and sells such collectibles in the course of its business.

5.     Defendant Oliver Kuttner ("Kuttner") is the principal of Mass Management, LLC, Edison 2 Motors ("Mass Management"), and on information and belief resides in Virginia at 108 2nd Street SW #2, Charlottesville, Virginia 22902.  On information and belief, Kuttner is the alter ego of Mass Management and uses that entity to transact business on his behalf.

6.     Defendant Mass Management is a Virginia Limited Liability Company with its principal place of business at 108 2nd Street SW #2, Charlottesville, Virginia 22902.  On information and belief, Kuttner is the sole member of Mass Management.

7.     Defendant Red Line Restorations, LLC ("Red Line") is a Connecticut Limited Liability Company with its principal place of business at 2316 Fairfield Ave., Bridgeport,

Connecticut, 06605.  On information and belief, the sole member of Red Line is Colton Amster, a Connecticut resident.

8.       Defendant Bruce Amster is an individual who, on information and belief, resides in Massachusetts at 80 Country Club Dr., #6A, South Yarmouth, MA 02664.  Bruce Amster is a principal of Defendant Red Line.  Indeed, the Connecticut Appellate Court previously upheld findings by the Connecticut Superior Court that, at around the timeframe that is relevant here, Red Line was a continuation of prior vehicle restoration businesses owned by Bruce Amster, and that Bruce Amster's son, Colton Amster had incorporated Red Line to assist Bruce Amster to evade a receivership order established by the Massachusetts Superior Court to enforce a judgment of fraud entered against Bruce Amster for conduct arising out of his operation of his prior vehicle restoration businesses.  *See Kendall v. Amster*, 948 A.2d 1041 (2008) (copy attached hereto as Exhibit A).

## JURISDICTION AND VENUE

9.       The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship among the parties, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

10.      The Court has personal jurisdiction over all defendants because all defendants have expressly consented to this Court's exercise of personal jurisdiction over them.  *See* Joint Motion to Transfer to Western District of Virginia Pursuant to 28 U.S.C. § 1404(a), attached hereto as Exhibit B.

11.      All defendants have expressly consented to this district as the venue.  *Id.*

## BACKGROUND

12.     The Maserati 300S was a racing car produced by the venerable Italian automotive company Maserati between 1955 and 1958.  The cars were driven by, among others, automotive racing legend Sir Stirling Moss.  Very few of these automobiles were ever produced.  Those still in existence are highly coveted by collectors.

13.     On information and belief, British automotive enthusiast Derek Lees once commissioned Peter Shaw of InterTech Engineering in the UK to create a replica chassis for a Maserati 300S.  *See* www.bonhams.com/auctions/11092/lot/639/.

14.     That replica chassis ("Shaw Chassis"), while carefully crafted, is not an original Maserati chassis.

15.     The Shaw Chassis, and any car built upon it, is considered a replica, and not an original Maserati.  As a replica, the Shaw Chassis, and any car built upon it, are far less valuable than an original Maserati.

16.     Various persons who have dealt with the Shaw Chassis in the past – including Shaw, its builder – have stated that they believe the chassis on the Vehicle to be the Shaw Chassis.

17.     Kuttner has admitted in writing that he purchased the Shaw Chassis, along with an assortment of other components, at an auction held in 2004 in the UK.  *See* Exhibit C attached hereto.

18.     On information and belief, between the time of Kuttner's purchase of the Shaw Chassis in 2004 and 2006, Kuttner caused a false stamp with the number "3067" to be placed onto the Shaw Chassis in an effort to effect a convincing forgery.  Plaintiff's informed belief is based on statements by Walter Baumer, a noted historian of Maserati vehicles, operator of the

website www.internationalmaseratiresearch.com, and author of the book entitled, "The Maserati 300S," that: (a) in or around late 2005, Kuttner told him that he had bought an original Maserati with chassis number 3067 from Wheeler in 1986; and (b) in or around 2006, Kuttner gave him a photograph of the Vehicle's chassis with a stamp bearing the number "3067" on it with the expectation that Baumer would include the photograph in his book.

19.    On information and belief, Kuttner, working in conjunction with Bruce Amster, sold the Vehicle to Scott Rosen ("Rosen") in or about November 2008.

20.    On information and belief, when Kuttner sold the Vehicle to Rosen in or about November 2008, he represented it to be an original Maserati with chassis number 3067, including by providing to Rosen a written statement sworn and notarized on November 13, 2008, representing that the Vehicle was a "Maserati 300 S #3067," and that he had purchased the chassis in April 1986 from a Herbert Wheeler ("Kuttner Sworn Statement").  *See* Exhibit D attached hereto.  As explained below, Kuttner and Bruce Amster subsequently used this same Kuttner Sworn Statement to induce the fraudulent transaction that is the subject of this suit.

21.    On information and belief, as part of the sale of the Vehicle to Rosen, it was agreed that Bruce Amster and his employees at Red Line would perform restoration work on the Vehicle.

22.    On information and belief, at some time after Rosen purchased the Vehicle from Kuttner, questions arose about its authenticity.

23.    On information and belief, Kuttner provided assurances to Rosen that the Vehicle was an original Maserati 300S with chassis number 3067.

24.     On information and belief, based on statements made by Baumer, in or around 2010, Rosen commissioned Baumer to do a comprehensive report authenticating the Vehicle as an original Maserati 300S with chassis number 3067.

25.     On information and belief, based on statements made by Baumer, when Baumer expressed concern as to the originality of the Vehicle, Kuttner and Bruce Amster took further steps to persuade Baumer to authenticate the Vehicle as an original Maserati 300S with chassis number 3067.  Among other things, Kuttner and Bruce Amster travelled to Germany to meet with Baumer, and provided him with a written report representing the Vehicle to be an original Maserati 300S with chassis number 3067, and further attempting to distinguish the Vehicle from the Shaw Chassis, all in an effort to convince Baumer that the Vehicle sold to Rosen was genuine and that the chassis on the Vehicle was not the Shaw Chassis.

26.     On information and belief, Baumer, believing the false representations made to him by Kuttner and Bruce Amster, provided assurances to Rosen that the Vehicle was likely genuine in the form of his own written report ("Vehicle History Report"), which incorporated what Kuttner and Bruce Amster had told him about Kuttner's acquisition of the Vehicle from Herbert Wheeler in 1986, and the details about the Vehicle that Kuttner and Bruce Amster had told him appeared genuine, including the number "3067" stamp on the Vehicle's chassis.

27.     On information and belief, in early 2013, Rosen nevertheless concluded that the Vehicle he had purchased from Kuttner was not genuine.

28.     On information and belief, Kuttner was forced to refund Rosen the purchase price of the Vehicle and also to reimburse Rosen for the additional expenses that he had incurred in connection with the Vehicle.  Kuttner retook possession of the Vehicle after this, but the Vehicle

remained at Red Line, where Bruce Amster was continuing to oversee restoration work on the Vehicle by Colton Amster.  *See* Exhibit E.

29.     In or about August 2013, Stephen Bell ("Bell"), the principal of Classic Investments, was approached by a broker, Jim Carpenter ("Carpenter"), about the possibility of acquiring an original Maserati 300S with chassis number 3067.

30.     At Kuttner's direction, Carpenter sent Bell various materials purporting to show the history and provenance of the Vehicle as an original Maserati 300S with chassis number 3067, including, but not limited to: (a) the Vehicle History Report; and (b) the Kuttner Sworn Statement.

31.     On information and belief, based on statements made by Carpenter, Kuttner had directed Bruce Amster to provide the Vehicle History Report to Carpenter for Carpenter to pass on to Classic Investments as a potential buyer of the Vehicle.

32.     When Kuttner directed Bruce Amster to provide Carpenter with the Vehicle History Report indicating that the Vehicle was likely genuine, and Bruce Amster followed Kuttner's direction, both men were acting with (a) the superior knowledge that the report had been prepared by Baumer based on the false representations that Kuttner and Bruce Amster had made to Baumer about the authenticity of the Vehicle; and (b) the expectation and intention that Carpenter would provide the report to Classic Investments as a potential buyer of the Vehicle, and that Classic Investments would rely on it.

33.     On information and belief, based on statements made by Carpenter, Kuttner had provided Carpenter with the Kuttner Sworn Statement.

34.     When Kuttner directed Carpenter to provide Classic Investments with the Kuttner Sworn Statement, Kuttner did so with (a) the superior knowledge that it contained his false

statements that the Vehicle was a "Maserati 300 S #3067," and that he had purchased the chassis in April 1986 from a Herbert Wheeler; and (b) the expectation and intention that Carpenter would provide the statement to Classic Investments as a potential buyer of the Vehicle, and that Classic Investments would rely on it.

35.     When Plaintiff expressed concern to Carpenter about the authenticity of the "3067" number stamp on the chassis, and Carpenter relayed this concern to Kuttner, Kuttner responded to Carpenter that the Vehicle was "real," and that the chassis was an "original" that he had purchased in the 1980s.  Kuttner made these representations to Carpenter about the originality of the chassis and the authenticity of the Vehicle with (a) the superior knowledge that they were false; and (b) the expectation and intention that Carpenter would provide the statements to Plaintiff and Classic Investments, and that Plaintiff and Classic Investments would rely on them.

36.     On information and belief, based on statements made by Carpenter, Bruce Amster also repeatedly represented to Carpenter that Maserati would certify the Vehicle as authentic. Bruce Amster made this representation to Carpenter with (a) the superior knowledge that it was false; and (b) the expectation and intention that Carpenter would relay the representation to Plaintiff and Classic Investments, and that Plaintiff and Classic Investments would rely on it.

37.     Relying on Defendants' representations that the Vehicle was a Maserati 300S with original chassis number 3067, and an original motor #3062, Bell, in conjunction with Plaintiff, made arrangements to purchase the Vehicle.  Additionally, Plaintiff and Bell began making arrangements for Plaintiff to resell the Vehicle for profit.

38.     In or about September 2013, Bell, acting through Classic Investments, entered into a written agreement for the purchase of the Vehicle with Kuttner, acting through Mass

Management (the "Sale Agreement").  A true and correct copy of the Sale Agreement is attached hereto as Exhibit A.

39.     The Sale Agreement expressly identified the Vehicle as a 1956 Maserati 300S, with "Vehicle Identification Number (VIN) 3067 Engine #3062."  *See* Exhibit E.

40.     The Sale Agreement also expressly stated that, "[t]he undersigned affirms that the information [regarding the VIN of the Vehicle and the engine number] is true and correct" and that the Sale Agreement was "made under penalties of perjury."  *See* Exhibit E.

41.     Plaintiff was providing the financing for this transaction, and Classic Investments assigned the agreement to purchase the Vehicle to Plaintiff.

42.     Throughout the transaction, including in the Sale Agreement itself, Defendants represented the Vehicle to be a Maserati 300S with original chassis number 3067.

43.     After wiring the overwhelming majority of the purchase price of the Vehicle to Kuttner and Mass Management, Plaintiff learned that the Vehicle was not, in fact, an original Maserati 300S with chassis number 3067.  Instead, it was a replica.

44.     Upon learning that the Vehicle was a forgery and not the original Maserati 300S with chassis number 3067 that Defendants had represented it to be, Plaintiff declined to take possession of the Vehicle and requested the return of the money it had wired to Kuttner and Mass Management.  Plaintiff's refund request was refused.

45.     Since the filing of the original complaint, Defendants have moved the Vehicle from Red Line's facilities in Connecticut to storage facilities maintained by Kuttner in Virginia.

46.     Plaintiff has been damaged in an amount of not less than the $3,200,000 that it paid for the Vehicle.

## FIRST CLAIM FOR RELIEF
### (Fraudulent Misrepresentation Against Kuttner, Mass Management, and Bruce Amster)

47.     Plaintiff incorporates paragraphs 1-45.

48.     Defendants each participated in a scheme to defraud Plaintiff by undertaking to deceive Plaintiff about the true nature of the Vehicle.

49.     Defendants made false representations of present fact regarding the nature of the Vehicle, including attaching a false number stamp onto the chassis of the Vehicle to make it appear to be the original, and identifying the Vehicle in the Sale Agreement as an original Maserati 300S with chassis number 3067.

50.     Defendants knew the true facts about the true nature of the Vehicle.

51.     The facts that Defendants misrepresented regarding the true nature of the Vehicle were material.

52.     Defendants knew these representations to be false when made.

53.     Each of the Defendants cooperated with the others in these various acts to deceive the Plaintiff about the true nature of the Vehicle.

54.     Defendants are jointly and severally liable for their actions.

55.     Defendants intended that Plaintiff would rely upon their representations and other acts of deception.

56.     Plaintiff did, in fact, rely upon Defendants' representations and other acts of deception to its detriment, and such reliance was justified.

57.     Plaintiff has suffered injury and resulting damages as a result of its justifiable reliance, including without limitation, by paying far more for the Vehicle than its actual value.

58.     Defendants' actions were willful, wanton, and without any justification.

## SECOND CLAIM FOR RELIEF
### (Fraudulent Concealment Against Kuttner, Mass Management, and Bruce Amster)

59.     Plaintiff incorporates paragraphs 1-58.

60.     Defendants each participated in a scheme to defraud Plaintiff by undertaking to deceive Plaintiff about the true nature of the Vehicle.

61.     Defendants knew that the Vehicle was a replica, but concealed and omitted this material fact from Plaintiff with the intention of misleading Plaintiff into believing that the Vehicle was an original Maserati 300S with chassis number 3067.

62.     Defendants intended that Plaintiff would rely upon the false impression created by their omission, concealment, and other acts of deception.

63.     Plaintiff did, in fact, rely upon the false impression created by Defendants' omission, concealment, and other acts of deception to its detriment, and such reliance was justified.

64.     Plaintiff has suffered injury and resulting damages as a result of its justifiable reliance, including without limitation, by paying far more for the Vehicle than its actual value.

65.     Defendants' actions were willful, wanton, and without any justification.

## THIRD CLAIM FOR RELIEF
### (Constructive Fraud Against All Defendants)

66.     Plaintiff incorporates paragraphs 1-65.

67.     Regardless of their intent, Defendants falsely represented the Vehicle as an original Maserati 300S with chassis number 3067.

68.     The facts that Defendants misrepresented regarding the true nature of the Vehicle were material.

69.     Each of the Defendants cooperated with the others in making false representations to the Plaintiff about the true nature of the Vehicle.

70.     Defendants are jointly and severally liable for their actions.

71.     Defendants intended that Plaintiff would rely upon their false representations about the nature of the Vehicle.

72.     Plaintiff did, in fact, rely upon Defendants' false representations, and such reliance was justified.

73.     Plaintiff has suffered injury and resulting damages as a result of its justifiable reliance, including without limitation, by paying far more for the Vehicle than its actual value.

## FOURTH CLAIM FOR RELIEF
### (Civil Conspiracy Against All Defendants)

74.     Plaintiff incorporates paragraphs 1-73.

75.     Defendants conspired, by their words and/or their conduct, to accomplish the unlawful goal of fraudulently inducing Plaintiff to purchase the Vehicle through their misrepresentations, omissions, concealments, and other acts of deception.

76.     Each Defendant performed acts to accomplish this unlawful goal.

77.     Plaintiff has suffered injury and resulting damages as a result of Defendants' unlawful conspiracy, including without limitation, by paying far more for the Vehicle than its actual value.

78.     Defendants' actions were willful, wanton, and without any justification.

## FIFTH CLAIM FOR RELIEF
### (Violation of Virginia Business Conspiracy Act, Va. Code Ann. §§ 18.2-499-500)

79.     Plaintiff incorporates paragraphs 1-78.

80.     Defendants conspired, by their words and/or their conduct, to accomplish the unlawful goal of fraudulently inducing Plaintiff to purchase the Vehicle through their misrepresentations, omissions, concealments, and other acts of deception.

81.     Each Defendant performed acts to accomplish this unlawful goal.

82.     The purpose of Defendants' unlawful conspiracy was to injure Plaintiff's trade, business, or profession.

83.     Plaintiff has suffered injury and resulting damages as a result of Defendants' unlawful conspiracy, including without limitation, by paying far more for the Vehicle than its actual value and losing potential deals to resell the Vehicle for profit.

84.     Defendants' actions were willful, wanton, and without any justification.

## SIXTH CLAIM FOR RELIEF
### (Rescission of Contract Against Kuttner and Mass Management)

85.     Plaintiff incorporates paragraphs 1-84.

86.     Mass Management executed the Sale Agreement, which is a written contract for the sale of the Vehicle to Classic Investments.

87.     The Sale Agreement was for the sale of a 1956 Maserati 300S with "Vehicle Identification Number (VIN) 3067 Engine #3062."  *See* Exhibit E.

88.     Classic Investments assigned the Sale Agreement to Plaintiff in a written agreement.

89.     Plaintiff performed the terms of the Sale Agreement except insofar as such performance was excused or otherwise not required.

90.     Defendants materially breached their obligations under the Sale Agreement, including by failing to deliver a 1956 Maserati 300S with vehicle identification number 3067, engine number 3062.

91.     Defendants' material breach of their obligations under the Sale Agreement wholly defeats its underlying purpose and warrants rescission of the agreement.

92.     In the alternative, the Sale Agreement is subject to rescission because Plaintiff was fraudulently induced to enter into it by Defendants' misrepresentations, omissions, concealments, and other acts of deception, which are alleged with particularity above.

**SEVENTH CLAIM FOR RELIEF**
**(Breach of Contract Against Defendants Kuttner and Mass Management)**

93.     Plaintiff incorporates paragraphs 1-92.

94.     Mass Management executed the Sale Agreement, which is a written contract for the sale of the Vehicle to Classic Investments.

95.     The Sale Agreement was for the sale of a 1956 Maserati 300S with "Vehicle Identification Number (VIN) 3067 Engine #3062." *See* Exhibit E.

96.     Classic Investments assigned the Sale Agreement to Plaintiff in a written agreement.

97.     Plaintiff performed the terms of the Sale Agreement except insofar as such performance was excused or otherwise not required.

98.     Defendants materially breached their obligations under the Sale Agreement, including by failing to deliver a 1956 Maserati 300S with vehicle identification number 3067, engine number 3062.

99.     Defendants' material breach of their obligations under the Sale Agreement has resulted in injury and damages to Plaintiff, including that the vehicle Defendants were actually to provide was not the vehicle represented in the contract, and has a significantly lower value.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff requests the following relief:

14

A.      Damages, in an amount to be determined at trial, for Defendants' fraud,

fraudulent concealment, and civil conspiracy.

B.      Punitive, exemplary, or other special damages in an amount to be determined at

trial against each Defendant for their fraud.

C.      Rescission of the Sale Agreement, including a return of all amounts paid in

connection with the Sale Agreement.

D.      Damages, in an amount to be determined at trial, for Defendants Kuttner and

Mass Management's breach of the Sale Agreement.

E.      Pre and post-judgment interest upon any damages awarded, including without

limitation, any amounts returned in connection with a rescission of the Sale Agreement.

F.      Any attorneys' fees, costs of suit, and other costs recoverable against any

Defendant.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues that may be tried to a jury.

Dated: June 23, 2014

                                                    Respectfully submitted,
                                                    PRICE AUTOMOTICE II, LLC
                                                    By Counsel


                                                    /s/    Edward B. Lowry, Esq.
                                                    Edward B. Lowry, Esquire (VSB No. 12199)
                                                    David W. Thomas, Esquire (VSB No. 73700)
                                                    MICHIEHAMLETT PLLC
                                                    500 Court Square, Suite 300
                                                    Charlottesville, Virginia 22902-0298
                                                    Phone:  (434) 951-7200
                                                    Fax:      (434) 951-7253
                                                    Email:   elowry@michiehamlett.com
                                                              dthomas@michiehamlett.com

Brian D. Ledahl, Esq.
    (pro hac vice application filed and pending)
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474
Email: bledahl@raklaw.com

Jean Y. Rhee, Esq.
    (pro hac vice application filed and pending)
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474
Email: jrhee@raklaw.com

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 23, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Jason M. Lynch, Esq.
Tess Hand-Bender, Esq.
REILLY POZNER LLP
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Phone: (303) 893-6100
Email: jlynch@rplaw.com
       thandbender@rplaw.com

     *Counsel for Oliver Kuttner and Mass Management, LLC, Edison 2 Motors*

T. Markus Funk, Esq.
Alex H. Bailey, Esq.
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Phone: (303) 291-2300
Fax:    (303) 291-2400
Email: MFunk@perkinscoie.com
       ABailey@perkinscoie.com

     *Counsel for Bruce Amster and Redline Restorations, LLC*

                 /s/    Edward B. Lowry, Esq.
                 Edward B. Lowry, Esquire (VSB No. 12199)
                 MICHIEHAMLETT PLLC
                 500 Court Square, Suite 300
                 Charlottesville, Virginia 22902-0298
                 Phone:  (434) 951-7200
                 Fax:     (434) 951-7253
                 Email:  elowry@michiehamlett.com