CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 2 2 2015

JULIA C DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

PRICE AUTOMOTIVE II, LLC,                    )
                                             )
        Plaintiff,                           )        Civil Action No. 3:14CV00029
                                             )
v.                                           )        **MEMORANDUM OPINION**
                                             )
MASS MANAGEMENT, LLC, EDISON                 )        By: Hon. Glen E. Conrad
2 MOTORS, a Virginia limited liability       )        Chief United States District Judge
company, et al.,                             )
                                             )
        Defendants.                          )

In this diversity action, the plaintiff, Price Automotive II, LLC, claims that the defendants conspired to sell a vehicle that was represented to be an authentic 1956 Maserati 300S to the plaintiff's assignor, and that what the plaintiff and its assignor actually purchased was a counterfeit vehicle. The case is presently before the court on the defendants' motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motions will be granted with respect to the plaintiff's claim for special damages, but will otherwise be denied.

## Background

The following facts, taken from the plaintiff's second amended complaint, are accepted as true for purposes of the defendants' motions to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Maserati, an Italian car manufacturer, produced a limited number of 300S racing cars between 1955 and 1958. Those still in existence are highly coveted by automobile collectors.

In 2004, Oliver Kuttner ("Kuttner"), the principal of Mass Management, LLC, Edison 2 Motors ("Mass Management"), purchased a chassis for a Maserati 300S that was designed by Peter

Shaw (the "Shaw Chassis"). The Shaw Chassis is a replica of the original Maserati chassis, and any car built upon it is far less valuable than the original model.

After purchasing the Shaw Chassis, Kuttner caused a false vehicle identification number ("VIN") plate with the number 3067 to be placed on the chassis. The Shaw Chassis was then used to assemble a vehicle that was passed off by Kuttner and Bruce Amster ("Amster"), a principal of Red Line Restorations, LLC ("Red Line"), as an authentic Maserati 300S with chassis number 3067 ("the Vehicle").

Kuttner, with Amster's assistance, initially sold the Vehicle to Scott Rosen ("Rosen") in November of 2008. During the course of that transaction, Kuttner falsely represented that the Vehicle was an original Maserati 300S with chassis number 3067. This misrepresentation was included in a sworn and notarized statement from Kuttner, in which he described the Vehicle as a "Maserati 300S #3067." 2d Am. Compl. Ex. D.

Rosen and Kuttner agreed that Amster and his employees at Red Line would perform restoration work on the Vehicle. Amster and his employees assembled the Vehicle using parts in Kuttner's inventory, with Amster exercising control over what parts were used in the process. While performing the restoration work, Amster became aware that the number 3067 VIN plate had been moved from a different chassis to the Shaw Chassis used to assemble the Vehicle.

At some point after Rosen purchased the Vehicle, Rosen questioned whether the Vehicle was constructed with a Shaw Chassis rather than an original chassis from the Maserati factory. In response, Kuttner assured Rosen that the Vehicle was an authentic Maserati 300S with chassis number 3067.

Rosen subsequently commissioned Walter Baumer, a noted Maserati historian, to authenticate the Vehicle. When Baumer expressed concerns regarding the Vehicle's authenticity,

2

Kuttner and Amster took steps to persuade him that the Vehicle was an original Maserati 300S with chassis number 3067 from the Maserati factory. For instance, in or around November of 2010, Kuttner and Amster travelled to Germany to meet with Baumer in person. During the meeting, Kuttner and Amster described Kuttner's purported acquisition of the Vehicle in 1986, and the details on the Vehicle that appeared genuine, including the number 3067 plate on the Vehicle's chassis. Kuttner and Amster also provided Baumer with a written report prepared by Amster. In the report, Amster falsely represented that the Vehicle's chassis was a number 3067 chassis, and attempted to distinguish the Vehicle's chassis from the Shaw Chassis. Based on the false representations made by Kuttner and Amster, Baumer prepared a written report for Rosen in which he opined that the Vehicle appeared to be genuine. Baumer's report incorporated what Kuttner and Amster had told him about the Vehicle's chassis and omitted any reference to the Shaw Chassis.

In early 2013, Rosen ultimately concluded that the Vehicle was not authentic. Rosen forced Kuttner to refund the purchase price of the Vehicle, and to reimburse him for the additional expenses that he had incurred in connection with the Vehicle. After Kuttner regained possession of the Vehicle, it remained at Red Line, where Amster continued to oversee its restoration.

In August of 2013, Stephen Bell ("Bell"), the principal of the plaintiff's assignor, Classic Investments, Inc. ("Classic Investments"), was approached by a broker, Jim Carpenter ("Carpenter"), about the possibility of acquiring the Vehicle from Kuttner. At Kuttner's direction, Carpenter sent Bell various materials purporting to show the history and provenance of the Vehicle as an original Maserati 300S with chassis number 3067, including the sworn statement from Kuttner. Kuttner also directed Amster to provide Baumer's written report to Carpenter, so that Carpenter could relay the report to Classic Investments.

3

Amster also repeatedly represented to Carpenter that the manufacturer, Maserati, would certify the Vehicle as authentic. The plaintiff alleges that Amster knew that this statement was false, and that the statement was made with the intention and expectation that it would be relayed to and relied upon by the plaintiff and Classic Investments. Amster also spoke to Bell by telephone on multiple occasions during the course of the negotiations between Classic Investments and Kuttner regarding the Vehicle, but never disclosed to Bell that he knew that the 3067 number plate on the Vehicle had been moved from another chassis, or that another buyer had returned the Vehicle after determining that it was not authentic.

Relying on the defendants' representations regarding the authenticity of the Vehicle, Bell and the plaintiff made arrangements to purchase the Vehicle. The sale was made with Amster's acquiescence and approval, and with the understanding that Amster and Red Line would receive a commission from the sale.

In September of 2013, Bell and Kuttner executed a written sale agreement (the "Amended Bill of Sale"), which provides, in pertinent part, as follows:

> FOR AND IN CONSIDERATION OF $3,300,000 USD (three million three hundred thousand US dollars), the undersigned grants, sells, transfers, and conveys to CLASSIC INVESTMENTS INC., the Buyer, and to Buyer's heirs, personal representatives and assigns the following vehicle:
>
> Year 1956, Make MASERATI, Model 300S, Vehicle Identification Number (VIN) 3067 Engine #3062 and all spare parts (including spare block and head etc) to have and to hold this motor vehicle forever.
>
> The car is available for inspection at Redline Restoration, 2316 Fairfield Ave, Black Rock, Connecticut. The . . . contacts are Bruce and Colton Amster. The car has about four (4) weeks' worth of detail work to be done . . . .
>
> . . . .
>
> A deposit of $50,000 USD (fifty thousand US dollars) will be bank wired to seller's account upon signing of this agreement by both parties. This deposit becomes non-refundable after two (2) weeks of due diligence. The remainder of

4

$3,250,000 USD (three million two hundred fifty thousand US dollars) will be due four (4) weeks from date of signing.   The buyer has the right to withhold $100,000 USD (one hundred thousand US dollars) from final payment to seller if for any reason the restoration mentioned above is not completed within the four (4) weeks from date of signing.

If buyer is not happy with any of his findings during the two (2) weeks due diligence period or sooner, he can terminate this contract.   Shall buyer terminate this contract, he will receive from seller his deposit, back in full, to be bank wired back to Classic Investments Inc. within three business days of verbal or written termination of this contract.

2d Am. Compl. Ex. E.   The Amended Bill of Sale further provides that the information contained in the agreement is "true and correct," and that the agreement "is made under penalties of perjury." Id.

The plaintiff provided the financing for the purchase of the Vehicle, and Classic Investments assigned the Amended Bill of Sale to the plaintiff.   After wiring $3,200,000 to Kuttner and Mass Management, the plaintiff learned that the Vehicle was not authentic.   The plaintiff declined to take possession of the Vehicle and requested a refund.   However, Kuttner refused to return the plaintiff's money.

**Procedural History**

On March 21, 2014, the plaintiff filed the instant action against Kuttner, Mass Management, Amster, and Red Line in the United States District Court for the District of Colorado.   On June 3, 2014, the case was transferred to this district on the parties' joint motion.

Thereafter, the plaintiff filed its first amended complaint against the defendants, which asserted the following claims: actual fraud against Kuttner, Mass Management, and Amster (Count I); fraudulent concealment against Kuttner, Mass Management, and Amster (Count II); constructive fraud against all of the defendants (Count III); civil conspiracy against all of the defendants (Count IV); statutory conspiracy against all of the defendants (Count V); rescission of

5

contract against Kuttner and Mass Management (Count VI); and breach of contract against Kuttner and Mass Management (Count VII).

The defendants subsequently moved to dismiss the first amended complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the defendants' motions on September 10, 2014. During the hearing, in response to arguments regarding the sufficiency of the allegations with respect to Amster, the court advised the parties that it would permit the plaintiff to file a second amended complaint, and that it would reserve ruling on the pending motions.

On September 24, 2014, the plaintiff filed a second amended complaint, to which Amster and Red Line filed another motion to dismiss. The motions to dismiss have been fully briefed and are ripe for review.

## Standard of Review

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). In reviewing a Rule 12(b)(6) motion, the court may consider the complaint, its attachments, and documents "attached

6

to [a] motion to dismiss, so long as they are integral to the complaint and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

**Discussion**

## I.     Fraud Claims (Counts I-III)

All of the defendants have moved to dismiss the fraud claims asserted in Counts I, II, and III of the second amended complaint.   As indicated above, the plaintiff asserts claims of actual fraud, fraudulent concealment, and constructive fraud.

### A.     Summary of the Applicable Law

The parties agree that Virginia substantive law applies to the plaintiff's claims.   To prevail on a claim of actual fraud under Virginia law, a plaintiff must prove the following elements by clear and convincing evidence: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled."   Evaluation Research Corp. v. Alequin, 439 S.E.2d 387, 390 (Va. 1994).   "Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it."   Id.   Virginia law also provides that the "[c]oncealment or omission of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud."   Allen Realty Corp v. Holbert, 318 S.E.2d 592, 597 (Va. 1984).   As with actual fraud, both constructive fraud and fraudulent concealment must be proven by clear and convincing evidence.   Evaluation Research Corp., 439 S.E.2d at 390; Spence v. Griffin, 372 S.E.2d 595, 598-99 (Va. 1988).

Fraud claims are subject to a heightened pleading standard under the Federal Rules of Civil Procedure.   Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with

7

particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). To satisfy this standard, the plaintiff must plead with particularity "the time, place, and contents of the false representations, as well as the identity of the party making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 786 (4th Cir. 1999). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." Id. at 783 n.5.

## B. The Kuttner Defendants

In moving to dismiss the plaintiff's fraud claims, Kuttner and Mass Management (the "Kuttner defendants") argue that any prudent person investing in classic racing cars would have made a sincere effort to ascertain the true condition and provenance of a car prior to purchasing it, and that the plaintiff is unable to establish that it reasonably relied on the misrepresentations and omissions at issue. At this stage of the proceedings, however, the court is unable to agree. The issue of whether a party's reliance was reasonable is ordinarily a question for the trier of fact to determine. See Bank of Montreal v. Signet Bank, 193 F.3d 818, 834 (4th Cir. 1999) (noting that the reasonableness of a party's reliance is a "question[] to be decided by the jury in light of, inter alia, the nature of the parties and the transaction, the representations, omissions, and distractions presented by the defendant, and the duties of investigation assumed by the plaintiff"); Miller v. Premier Corp., 608 F.2d 973, 982 (4th Cir. 1979) (emphasizing that the "issues of reliance and reasonableness, going as they do to subjective states of mind and applications of objective standards of reasonableness, are preeminently factual issues for the trier of fact"). Assuming the truth of the plaintiff's allegations regarding the misrepresentations made by Kuttner and Amster, the court concludes that the allegations plausibly satisfy this element. See, e.g., Elliott v. Great Point Partners, LLC, No. 1:10cv1019, 2011 U.S. Dist. LEXIS 827, at *19-20 (E.D. Va. Jan. 5,

8

2011) ("That Plaintiffs did not conduct their own investigation is not an absolute bar to their fraud claim. It is plausible that their lack of investigation was not in itself unreasonable, and it is plausible that even then they may be excused from that duty. Assuming the veracity of Plaintiffs' allegations and taking them in the context of the Complaint as a whole, the Complaint plausibly suggests an entitlement to relief.").

The court must likewise reject the Kuttner defendants' argument that the fraud claims are barred by the provisions of the Amended Bill of Sale, which permitted the buyer to inspect the Vehicle and to terminate the agreement if the buyer was "not happy with any of his findings during the two (2) weeks due diligence period." 2d Am. Compl. Ex. E. Under Virginia law, contractual disclaimers are "not a prophylactic" against fraud claims. Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 630 (4th Cir. 1999). Thus, "if an individual is duped into entering into an agreement that same agreement cannot take away the individual's right to sue for fraud." Nahigian v. Juno Loudon, LLC, 684 F. Supp. 2d 731, 740 (E.D. Va. 2010); see also FS Photo, Inc. v. PictureVision, Inc., 61 F. Supp. 2d 473, 481 (E.D. Va. 1999) ("[A] merger clause born of fraud should not be allowed to immunize the fraudulent conduct; had there been no fraud there would be no merger clause."). At this stage of the proceedings, the court is convinced that the plaintiff has alleged sufficient facts to establish that the Amended Bill of Sale was the product of fraud. Consequently, "the terms of that agreement cannot protect (allegedly) fraudulent parties from responsibility for their actions." Nahigian, 684 F. Supp. 2d at 740. For these reasons, the Kuttner defendants' motion will be denied with respect to the plaintiff's fraud claims.

**B.    The Amster Defendants**

In moving to dismiss the fraud claims against Amster and Red Line (the "Amster defendants"), the Amster defendants first argue that the plaintiff's fraud claims are subject to

9

dismissal because the second amended complaint fails to allege that any false representations of material fact were made by Amster. For the following reasons, however, the court is unable to agree.

According to the second amended complaint, Amster prepared a report that falsely described the Vehicle's chassis as a number 3067 chassis rather than a Shaw Chassis, and attempted to distinguish the Shaw Chassis from the Vehicle's chassis. The plaintiff alleges that this report was generated in an effort to convince Walter Baumer that the Vehicle was authentic, and that Baumer incorporated Amster's false representations in his own written report, which Amster provided to Classic Investments. The plaintiff alleges that Amster knew that Baumer's report incorporated Amster's false representations pertaining to the Vehicle's chassis, and that Amster intended for the potential purchaser to rely on the report. Assuming the truth of the plaintiff's allegations, the court concludes that the second amended complaint states a plausible claim for fraud based on Amster's misrepresentations regarding the Vehicle's chassis. See Alexander v. Southeastern Wholesale Corp., 978 F. Supp. 2d 615, 623 (E.D. Va. 2013) ("In Virginia, a claim of fraud does not require direct contact or privity between the defendant and the plaintiff. A complaint must merely allege that the defendant knew or had reason to know that the plaintiff would rely on the misrepresentation.") (citing Mortarino v. Consultant Eng'g Servs., Inc., 467 S.E.2d 778, 782 (Va. 1996)); see also Branin v. TMC Enters., LLC, 832 F. Supp. 2d 646, 653 (W.D. Va. 2011) (holding that the plaintiff stated an actionable claim for actual fraud based on false representations made to a third party regarding a car's mileage, where the plaintiff alleged that the defendant "misrepresented the mileage with the knowledge that the misrepresentation would be repeated to induce a purchaser into believing the car had less mileage than it actually did").

10

The plaintiff also alleges that Amster falsely represented to Carpenter on multiple occasions that Maserati would certify the Vehicle as authentic. The plaintiff claims that Amster made this representation to Carpenter with superior knowledge that it was false, and that he did so with the expectation that Carpenter would relay the representation to the plaintiff and Classic Investments, and that the plaintiff and Classic Investments would rely on it. While the Amster defendants contend that this alleged misrepresentation is not actionable since it pertains to future conduct by a third party, the court is unpersuaded.

"As a general rule, 'fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfilled promises or statements as to future events.'" Patrick v. Summers, 369 S.E.2d 162, 164 (Va. 1988) (quoting Soble v. Herman, 9 S.E.2d 459, 464 (Va. 1940)). However, this rule is not without exceptions. For instance, the Supreme Court of Virginia has recognized that a claim for fraud "may sometimes be predicated on promises which are made with a present intention not to perform them, or on promises made without any intention to perform them." Lloyd v. Smith, 142 S.E. 363, 365 (Va. 1928). "The basis for the exception is that 'the state of the promisor's mind at the time he makes the promise is a fact,' so that, if he misrepresents his state of mind, 'he misrepresents a then existing fact.'" Merenstein v. St. Paul Fire & Marine Ins. Co., 142 F. App'x 136, 139 (4th Cir. 2005) (quoting Lloyd, 142 S.E. at 366).

This exception has been applied in cases involving misrepresentations "related to the prospective conduct of third parties." Id. at 140. In Merenstein, the plaintiff alleged that one of the defendant's agents, in an effort to induce the plaintiff to agree to a malpractice settlement, stated "in unequivocal terms that the proposed settlement . . . would have no adverse or negative effect whatsoever on [the plaintiff's] ability to obtain liability insurance coverage." Id. at 137. Since the plaintiff alleged that the agent "knew that his representation was false at the time of its

11

making," the Fourth Circuit held that the agent's assurance, which could be "construed as a promise made with present fraudulent intent," constituted a sufficient predicate for the plaintiff's claim of actual fraud. Id. at 140; see also Boykin v. Hermitage Realty, 360 S.E.2d 177, 179 (Va. 1987) (upholding a verdict for the plaintiffs on fraud claims that were based on assurances regarding the future conduct of a third-party developer).

In this case, the plaintiff alleges that Amster unequivocally represented that Maserati would certify the Vehicle as authentic in order to induce the plaintiff and Classic Investments to purchase the Vehicle. The plaintiff further alleges that Amster knew that this representation was false at the time that it was made. Consistent with the foregoing decisions, the court concludes that Amster's promise regarding the future conduct of a third party, which was allegedly made with present fraudulent intent, constitutes a sufficient predicate for the plaintiff's claims of fraud.

The Amster defendants also argue that this representation is not actionable because it is a mere expression of opinion. While mere expressions of opinion generally cannot form the basis of a claim for fraud, the Supreme Court of Virginia has "not . . . established a bright line test to ascertain whether false representations constitute matters of opinion or statements of fact." Mortarino, 467 S.E.2d at 781. Instead, "each case must in a large measure be adjudged from its own facts, taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances." Id. (internal citation and quotation marks omitted); see also Merenstein, 142 F. App'x at 141 (finding this principle "particularly significant" when the underlying complaint is reviewed at the Rule 12(b)(6) stage). In this case, the evidence may show that Maserati will not certify the Vehicle as authentic, and that Amster was aware of this at the time he made the representations to the contrary. Because Amster's assurances could be construed as affirmations

12

of fact in this context, the court is unable to conclude, at this stage of the proceedings, that they are not actionable.

The Amster defendants next argue that the claim for fraudulent concealment (Count II) is subject to dismissal because Amster had no duty to disclose any information regarding the authenticity of the Vehicle. Under Virginia law, "[a] duty to disclose does not normally arise when parties are engaged in an arm's length transaction." Bank of Montreal, 193 F.3d at 829. However, such duty "may arise (1) if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist[;] or (2) if one party takes actions which divert the other party from making prudent investigations (e.g., by making a partial disclosure)." Id. (internal citations omitted).

At this stage of the case, the plaintiff has alleged sufficient facts to support the existence of both of these circumstances giving rise to a duty to disclose. As for the first circumstance, the allegations in the second amended complaint plausibly establish that Amster had superior knowledge of facts pertaining to the authenticity of the Vehicle, that he expected and intended that Classic Investments and the plaintiff would act on the assumption that the Vehicle was authentic, and that he deliberately declined to disclose these material facts. As for the second circumstance, the allegations in the second amended complaint likewise plausibly establish that Amster and Kuttner took steps to divert Classic Investments and the plaintiff from discovering the concealed facts, such as by representing that the manufacturer would certify the Vehicle as authentic, and by providing written materials purporting to show the Vehicle's history and provenance as an original Maserati 300S with chassis number 3067. In light of these allegations, the court is convinced that the plaintiff has sufficiently pled that Amster had a duty to disclose the facts in his possession relating to the authenticity of the Vehicle.

13

The court is also of the opinion that the plaintiffs have pled their fraud claims with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b) and the purposes for which the rule was drafted. After reviewing the specific allegations in the second amended complaint, the court is satisfied that the defendants are amply aware of the "particular circumstances for which [they] will have to prepare a defense," and that the plaintiffs have demonstrated "substantial pre-discovery evidence of those facts." Harrison, 176 F.3d at 784. Accordingly, the fraud claims will not be dismissed under Rule 9(b).

Finally, the court must reject the Amster defendants' argument that the plaintiff has failed to allege facts sufficient to show that Red Line is vicariously liable for any fraudulent representations or omissions by Amster. The Supreme Court of Virginia has "long adhered to the rule that 'a principal is bound by representations of his agent, made either in the scope of his employment or in furtherance of the object for which he is employed.'" Nationwide Ins. Co. v. Patterson, 331 S.E.2d 490, 493 (Va. 1985) (quoting Cerriglio v. Pettit, 75 S.E. 303, 307 (Va. 1912)). "'In every such case, the principal holds out his agent, as competent, and fit to be trusted; and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of the agency.'" Id. (quoting Jefferson Standard Life Ins. Co. v. Hedrick, 27 S.E.2d 198, 202 (Va. 1943)).

In this case, as in Nationwide, the allegations in the second amended complaint plausibly establish that Amster was "held out" as Red Line's agent. Id. During the relevant time period, Amster regularly communicated by using Red Line's telephone number and email accounts, and Amster's emails included a signature block setting forth Red Line's full name, address, and telephone number. See Id. (holding that an individual was held out as an agent for the insurance company, where "[h]e was so listed in the local telephone directory" and "[h]e used Nationwide's

14

letterhead"). The allegations in the second amended complaint also plausibly establish that Amster was acting in the scope of his employment at the time of his alleged misrepresentations and omissions regarding the authenticity of the Vehicle. The plaintiff alleges that Red Line was responsible for assembling and restoring the Vehicle, that Amster exercised control over this process at Red Line's facility in Connecticut, and that Amster and Red Line stood to receive a commission from the sale. Accordingly, the Amster defendants' motions to dismiss must be denied to the extent it seeks to dismiss the fraud claims against Amster and Red Line.

## II.    Conspiracy Claims (Counts IV and V)

In Count IV of the second amended complaint, the plaintiff asserts a common law conspiracy claim against the defendants. In Count V, the plaintiff asserts a related claim under the Virginia Business Conspiracy Act.

To prevail on the civil conspiracy claim, the plaintiff "must show that 'two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some unlawful purpose by a criminal or unlawful means.'" Shirvinski v. United States Coast Guard, 673 F.3d 308, 320 (4th Cir. 2012) (quoting Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc., 453 S.E.2d 261, 267 (Va. 1995)). To withstand a motion to dismiss, a plaintiff must "plead the requisite concert of action and unity of purpose in more than mere conclusory language." Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC, 261 F. Supp. 2d 483, 499-500 (E.D. Va. 2003). "[I]t is not enough merely to state that a conspiracy took place." Johnson v. Kaugars, 14 Va. Cir. 172, 176 (Va. Cir. 1988).

Under the Virginia Business Conspiracy Act, injured parties can obtain treble damages against "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . . willfully and maliciously injuring another in his reputation, trade,

15

business or profession by any means whatever." Va. Code §§ 18.2-499 – 18.2-500. "[A]s with common law civil conspiracy, this statute requires proof 'that the defendants have combined . . . to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means.'" Shirvinski, 673 F.3d at 321 (quoting Potomac Valve & Fitting Inc. v. Crawford Fitting Co., 829 F.2d 1280, 1284 (4th Cir. 1987)). To withstand a motion to dismiss, "the allegations must allow inference of a meeting of the minds and not mere parallel conduct." Kamin v. United States Bank Nat'l Ass'n, No. 1:13CV00058, 2013 U.S. Dist. LEXIS 172935, at *8 (W.D. Va. Dec. 9, 2013). The plaintiff need not prove that the defendants' "primary and overriding purpose [was] to injure another," but rather that the defendants "acted intentionally, purposefully, and without lawful justification." Advanced Marine Enters. v. PRC, Inc., 501 S.E.2d 148, 154-44 (Va. 1998).

In moving to dismiss the conspiracy counts, the defendants challenge the sufficiency of the plaintiff's allegations with respect to the element of concerted action that is common to both claims. Upon review of the second amended complaint, however, the court is satisfied that this element has been adequately pled. As summarized above, the plaintiff alleges that Kuttner and Amster have acted in concert to pass off the Vehicle as an authentic Maserati 300S with the original 3067 chassis since at least 2008, when they induced Rosen to purchase the Vehicle. When Rosen questioned the Vehicle's legitimacy and commissioned Walter Baumer to authenticate the Vehicle, Kuttner and Amster traveled to Germany to meet with Baumer and convince him that the Vehicle was authentic. As part of their efforts, Kuttner and Amster gave Baumer the report prepared by Amster, which falsely represented that the Vehicle's chassis was the 3067 chassis rather than the Shaw chassis, and attempted to distinguish the Shaw Chassis from the Vehicle's chassis. After Rosen discovered that the Vehicle was not authentic and forced Kuttner to return his money, Kuttner and Amster endeavored to sell the Vehicle to Classic

16

Investments with the understanding that they would both benefit financially from the sale. In so doing, Kuttner and Amster provided documents that either contained, or were based on, false representations regarding the Vehicle's authenticity, and Amster falsely represented that the manufacturer would certify the Vehicle as authentic. Construing the allegations in the light most favorable to the plaintiff, the court is convinced that the allegations are sufficient to support the required element of concerted action. Accordingly, the defendants' motions will be denied with respect to Counts IV and V.

### III. Contract Claims (Counts VI and VII)

In Count VI, the plaintiff asserts a claim for rescission of contract against Kuttner and Mass Management. In Count VII, the plaintiff asserts a claim for breach of contract against Kuttner and Mass Management. In both counts, the plaintiff alleges that the Amended Bill of Sale "was for the sale of a 1956 Maserati 300S with 'Vehicle Identification Number (VIN) 3067 Engine #3062,'" and that the Kuttner defendants "materially breached their obligations under the Sales Agreement . . . by failing to deliver a 1956 Maserati 300S with vehicle identification number 3067, engine number 3062." 2d Am. Compl. ¶¶ 88, 91, 96, 99.

The plaintiff and the Kuttner defendants agree that Article 2 of the Virginia Uniform Commercial Code ("UCC") governs the Amended Bill of Sale because it is a contract for the sale of goods. See Va. Code § 8.2-102 ("Unless the context otherwise requires, this title applies to transactions in goods . . . ."); see also Credit Acceptance Corp. v. Coates, 75 Va. Cir. 267, 270 (Va. Cir. Ct. 2008) (holding that "a sales agreement for a motor vehicle . . . constitutes a 'transaction in goods' and is thus governed by Article 2 of the UCC"). Under Article 2 of the UCC, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform

17

to the affirmation or promise." Va. Code § 8.2-313(1). Likewise, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Id. "Such an express warranty is breached when the goods fail to conform to the affirmation of fact or description made by the seller." Ali v. Allergan USA, Inc., No. 1:12-CV-115, 2012 U.S. Dist. LEXIS 121417, at *45 (E.D. Va. Aug. 23, 2012).

In this case, the Kuttner defendants concede that the Amended Bill of Sale "contemplated [that] the car being sold was a particular identified car and parts, not some unidentified car . . . ." Kuttner Defs.' Br. in Opp'n 8. More specifically, the Kuttner defendants affirmed, "under penalties of perjury," that they were agreeing to sell a particular motor vehicle described as a 1956 Maserati 300S with "Vehicle Identification Number (VIN) 3067 Engine #2062 and all spare parts (including spare block and head etc)." 2d Am. Compl. Ex. E. While the Kuttner defendants nonetheless argue that nothing contained in the agreement could have formed the basis of the parties' bargain in light of the agreement's inspection provisions, the court agrees with the plaintiff that this argument is without merit.

In interpreting the "basis of the bargain" language contained in Virginia Code § 8.2-313(1), the Supreme Court of Virginia has held that "[a]n affirmation of fact is presumed to be a part of the bargain, and any fact that would remove such affirmation out of the agreement 'requires clear affirmative proof.'" Yates v. Pitman Mfg., Inc., 514 S.E.2d 605, 607 (Va. 1999) (quoting Daughtrey v. Ashe, 413 S.E.2d 336, 339 (Va. 1992)); see also Martin v. American Medical Sys., Inc., 116 F.3d 102, 105 (4th Cir. 1997) (emphasizing that, under Virginia law, "[t]he express warranty inquiry focuses on what it is that the seller agreed to sell, and, absent clear proof that the parties did not intend their bargain to include the seller's description of the goods, that description is an express warranty"). Applying these principles, the court agrees with the plaintiff that the

description of the Vehicle in the Amended Bill of Sale is presumed to be part of the parties' bargain absent clear and affirmative proof to the contrary. At this stage of the proceedings, the court is unable to conclude that the inspection provisions in the Amended Bill of Sale, which do not affirmatively disclaim all express warranties or explicitly indicate that a failure to inspect will constitute a waiver of all contractual remedies, preclude the plaintiff from recovering under a breach of express warranty theory.

To the extent the Kuttner defendants alternatively argue that the Vehicle conforms to the affirmations and descriptions in the Amended Bill of Sale and, thus, that there has been no breach of any express warranty, such argument is inappropriate at this stage of the case. The issue of whether any express warranties were breached is a question of fact that cannot be decided on a Rule 12(b)(6) motion to dismiss. Accordingly, the Kuttner defendants' motion will be denied with respect to the plaintiff's contract claims.

### IV.    Claim for punitive and other special damages

In its prayer for relief, the plaintiff seeks to recover punitive and "other special damages in an amount to be determined at trial against each [d]efendant for their fraud." 2d Am. Compl. 15. The court will first address the plaintiff's claim for punitive damages. Under Virginia law, "punitive damages may be recovered on a common law fraud claim – including a fraud claim arising from the purchase of a vehicle – only upon 'proof, either direct or circumstantial, showing actual malice.'" Adkins v. Crown Auto, Inc., 488 F.3d 225, 234 (4th Cir. 2007) (quoting Jordan v. Sauve, 247 S.E.2d 739, 741 (Va. 1978)). "Actual malice" may be established by showing that a defendant's actions were "prompted by ill will, malevolence, grudge, spite, [or] wicked intention," or that they were "so reckless or negligent as to evince a conscious disregard of the plaintiff's rights." Jordan, 247 S.E.2d at 741-42 (internal citation omitted).

19

In _Jordan_, the Supreme Court of Virginia held there was sufficient evidence to support an award of punitive damages for fraud in connection with the sale of a vehicle. The Supreme Court noted that the evidence of the defendant's misrepresentation that the vehicle was new, coupled with his misstatements about the vehicle's mileage, brakes, sticker price, and financing, would have justified the jury in finding the defendant's misconduct to be of such a reckless and negligent character as to evince a conscious disregard for the plaintiff's rights. _Id._ Accordingly, the Supreme Court reversed the trial court's decision to strike the plaintiff's punitive damages claim. _Id._

Comparing the facts alleged in this case to those in _Jordan_, the court concludes that the plaintiff has adequately stated a claim for punitive damages at this stage of the proceedings. At a minimum, the plaintiff's allegations plausibly suggest that the defendants' misrepresentations and omissions regarding the authenticity of the Vehicle were so reckless or negligent as to evince a conscious disregard for the plaintiff's rights. Accordingly, the punitive damages claim will not be dismissed at this time.

On the other hand, the court must dismiss the plaintiff's claim for "other special damages." Federal Rule of Civil Procedure 9(g) requires that special damages be "specifically stated" in the complaint. The primary purpose of this heightened pleading requirement "is one of notice, both to inform defending parties as to the nature of the damages claimed in order to avoid surprise; and to inform the court of the substance of the complaint." Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth., 745 F.3d 703, 725 (4th Cir. 2014) (internal citation and quotation marks omitted). In this case, the plaintiff's conclusory demand for "other special damages in an amount to be determined at trial" is clearly insufficient to meet this standard. See id. (holding that the plaintiff failed to adequately plead special damages in connection with its breach of contract

20

claims where the breach of contract count "merely prayed for aggregate damages 'in an amount to be proven at trial but not less than $419, 575, plus interest'"); see also Mgmt. Servs. of Illinois, Inc. v. Health Mgmt. Sys, Inc.., 907 F. Supp. 289, 294 (C.D. Ill. 1995) (dismissing the plaintiff's claim for special damages, where the plaintiff merely requested an amount of damages to be proven at trial, and did not state what those damages were or how it was damaged). Accordingly, the plaintiff's claim for other special damages will be dismissed.

## Conclusion

For the reasons stated, the defendants' motions to dismiss will be granted in part and denied in part. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This _22d_ day of January, 2015.

_____

Chief United States District Judge

21